IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANN MARIE IMBRENDA,** | : | |
| Plaintiff | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **NO. 07-3663** |
| **UNITED STATES OF AMERICA** | : | |
| Defendant. | : | |
| | : | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

L. Felipe Restrepo                                                                 March 28, 2008
**United States Magistrate Judge**

      Plaintiff, Ann Marie Imbrenda, initiated this civil action against the United States of America, United States Postal Service, Brookhaven Shopping Center, Jane Segal, Merril Sporkin, Odette Steinberg, Louis S. Fine, Patricia Fine, and Herbert Yentis & Company, Inc. on August 31, 2007.  See Compl. 1. (Document # 1)  Plaintiff asserts jurisdiction under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(a) and 1367(a).  Id. at 4.  The parties agreed to dismiss Brookhaven Shopping Center, Jane Segal, Merril Sporkin, Odette Steinberg, Louis S. Fine, Patricia Fine, and Herbert Yentis & Company, Inc. as defendants on November 5, 2007.  See Stip. to Dismiss 11/5/07. (Document #19)

      Plaintiff argues that she fell and sustained injuries as a result of defendant's negligence when she was in the United States Post Office located in Brookhaven, PA on November 15, 2006.  See Compl. 4.  Plaintiff contends that defendant breached its duty to keep the Post Office safe for business invitees and requests a judgment in her favor.  Id. at 6-12.  Defendant urges this Court to find that plaintiff's own "negligence, carelessness or recklessness" was the sole cause of her injury.  See Answer 7. (Document # 14)  In the alternative, defendant argues that plaintiff

should be barred from recovery under 42 Pa. C.S.A. § 7102 because her negligence was greater

than defendant's negligence, "if any," or that plaintiff's recovery should be "diminished"

proportionately under 42 Pa. C.S.A. § 7102.  Id.  A bench trial was held on February 5, 2008.

## A.  FINDINGS OF FACT

    1.  Plaintiff was born on January 12, 1939, making her 69 years old.  She lives at 280

Bridgewater Road, Apartment D-18, Brookhaven, PA 19105.  See Trial Tr. 36-37; see also

Compl. 1.

    2.  Plaintiff has a tenth grade education.  Trial Tr. 38.

    3.  On November 15, 2006 at 9:00 a.m., plaintiff went to the U.S. Post Office located at

3522 Edgemont Avenue, Brookhaven, PA.  Id. at 41; see also Compl. 3.

    4.  The right hand door to the Brookhaven Post Office automatically opens inside the

building and is the door typically used for ingress to the Post Office.  Trial Tr. 32.

    5.  In the entry of the Post Office there is a mat covering the floor and the rest of the

lobby area is covered with only tile.  Id. at 12.

    6.  Nancy Cannon became an employee of the United States Postal Service as a

maintenance worker in April 2004, and was assigned to the Brookhaven Post Office on

November 15, 2006. Id.  8-9.

    7.  Ms. Cannon followed another maintenance worker as her training and did not receive

formal safety training from the Post Office.  Id. at 9-10.

    8.  On November 15, 2006, Ms. Cannon placed a caution sign in front of the right side

door to the Brookhaven Post Office and proceeded to mop the right hand side of the floor of the

lobby around 8:45 a.m.  Id. at 32.

2

9.  Ms. Cannon mopped the right side of the floor, waited for it to dry, and then proceeded to mop the left side of the floor.  She left the caution sign on the right side of the floor where customers enter the building.  Id. at 32; See also Pl.'s Trial Ex. P1; Def.'s Trial Ex. A.

10.  Ms. Cannon's reasoning for placing the caution sign in front of the entrance was to put customers on notice that the floor was wet.  Trial Tr. 14-15, 18-19, 31-32.

11.  Robert Martin was Ms. Cannon's supervisor in charge of the Brookhaven Post Office on November 15, 2006.  Id. at 76-77.

12.  Mr. Martin never instructed Ms. Cannon to move the caution sign to the left side of the floor after she mopped that side of the floor.  Mr. Martin testified that he wanted the caution sign on the right side of the floor, in front of the entrance, because he wanted customers to be aware that the floor "could be wet" as they walked into the Post Office lobby.  Id. at 77-78.

13.  There were two caution signs available at the Brookhaven Post Office on November 15, 2006, but Ms. Cannon only placed one sign in the lobby after mopping. Id. at 10-11, 35-36.

14.  Ms. Cannon testified that Mr. Martin instructed her that only one caution sign was needed if only one room had been mopped.  Id. at 18.

15.  Around four or five people walked to the left after seeing the caution cone on the right.  They walked over the wet floor on the left side without falling before plaintiff entered the Post Office.  See Pl.'s Trial Ex. P1; Def.'s Trial Ex. A; Trial Tr. 83, 90.

16.  The left side of the floor was still wet from being mopped when plaintiff fell.  Plaintiff testified that her "whole left side" was wet after she fell.  Trial Tr. 42-43; see also Pl.'s Trial Ex. P1; Def.'s Trial Ex. A

17.  Plaintiff entered the Post Office through the door on the right side.  The yellow

3

caution "wet floor" sign was placed toward the end of the mat on the right side as plaintiff entered the Post Office.  Trial Tr. 41; Pl.'s Trial Ex. P1; Def.'s Trial Ex. A.

18.  Plaintiff wanted to arrive at the Post Office by 10:00 a.m. in order to send her brother a card in the mail.  Trial Tr. 40.

19.  Plaintiff proceeded to walk to the left side after noticing the caution sign on the right and slipped and fell, landing on the left side of her body.  See Trial Tr. 41-43; see also Pl.'s Trial Ex. P1; Def.'s Trial Ex. A.

20.  The caution sign caused plaintiff to walk to the left and in essence misdirected plaintiff to walk on top of a wet floor.  Trial Tr. 41-42.

21.  Plaintiff did plan to go to the left side of the Post Office lobby in order to use the stamp machine.  Id. at 41.

22.  Plaintiff originally thought the caution sign was orange when in fact it was yellow. She did not know what was written on the sign, but interpreted the sign to mean that she should not walk in that area.  Id. at 57.

23.  Plaintiff was wearing either slippers or sandals with no backs in the Post Office.  She told Ms. Cannon that "she couldn't believe she went out in her bedroom slippers," and that "she never goes out in her bedroom slippers."  Id. at 33, 57-58.

24.  Plaintiff was unsure whether her shoe came off before or after she fell.  Id. at 59; see also Pl.'s Trial Ex. P1; Def.'s Trial Ex. A.

25.  When plaintiff entered the Post Office, Ms. Cannon was in the back and no cleaning or maintenance supplies were left in the lobby except for the caution sign.  Trial Tr. 25; see also Pl.'s Trial Ex. P1.

4

26.  Plaintiff's accident was captured on a surveillance video tape that faces the front doors and contains frames in a sequence of 3 to 4 seconds.  See Pl.'s Trial Ex. P1; Def.'s Trial Ex. A.

27.  Subsequent to plaintiff falling, she began to feel nausea, dizziness, and pain in her left knee.  Her knee was protruding and she could not stand on her left leg.  Trial Tr. 43-44.

28.  Ms. Cannon came to the Post Office lobby after being notified of plaintiff's fall and moved the caution sign over to the left side of the floor where plaintiff had slipped and fallen.  Id. at 15-20, 34-35.

29.  Ms. Cannon called an ambulance for plaintiff.  Id. at 33.

30.  Ms. Cannon moved the caution sign to the left side of the floor because that area of the lobby was wet and she did not want other customers to slip and fall[1].  Id. 17-18.

31.  Plaintiff was transported to Crozer-Chester Hospital in an ambulance on November 15, 2006.  She was discharged on November 21, 2006.  See Pl.'s Trial Ex. 4; see also Def.'s Trial Ex. E., CCMC0013.

32.  Plaintiff's injuries included a left tibia fracture and left patellar tendon rupture.  Pl.'s Trial Ex. 4.

33.   On November 17, 2006, during her hospital stay, plaintiff had an open reduction procedure "with internal fixation of tibia/fibula/patella (leg)," which was performed by Dr. Lutz. Id.; see also Def.'s Trial Ex. E, CCMC0062-63.

34.  Plaintiff's November 20, 2006 treatment notes indicate that at that point, she was

---

[1]The fact that Ms. Cannon moved the caution sign after plaintiff slipped and fell was admitted for the purpose of proving "feasability of precautionary measures," not to prove negligence.  See Fed. R. Evid. 407.

able to walk "household distances."  Trial Tr. 59; see also Def.'s Trial Ex. E, CCMC0020.

35.  Dr. Lutz cleared plaintiff "to full weight-bear with the brace and plate" on November 30, 2006.  Def.'s Trial Ex. D, Lutz0008.

36.  Plaintiff had physical therapy in her home, which started approximately one week after she was released from the hospital and lasted until December 20, 2006.  See Def.'s Trial Ex. F, Dynamic0024; Trial Tr. 49.

37.  On December 21, 2006, plaintiff began physical therapy at Dynamic Physical Therapy & Rehabilitation Center, Inc. ("Dynamic").  Plaintiff was discharged from physical therapy at Dynamic on April 23, 2007.  See Def.'s Trial Ex. F, Dynamic 0022 and 0145.

38.  At plaintiff's December 19, 2006 visit with Dr. Lutz, he noted she was not experiencing "any pain," could remove her knee brace if "comfortable," and would "continue using the walker and cane as needed."  Def.'s Trial Ex. D, Lutz0007; see also Trial Tr. 61.

39.  Plaintiff reported that she used a walker until March 2007 and that she used a cane for a month after she stopped using the walker.  Trial Tr. 52.

40.  At plaintiff's January 15, 2007 visit with Dr. Lutz, he reported that plaintiff was walking with a "single point cane" and also noted that they "discussed the possibility of a total knee replacement if her pain persist[ed] longer than six months."  At this visit, plaintiff reported to Dr. Lutz that she was improving, but also complained of "medial discomfort with ambulation that occurs intermittently."  Plaintiff testified that she did not tell Dr. Lutz she was improving. Def.'s Trial Ex. D, Lutz0006; see also Trial Tr. 62.

41.  At plaintiff's January 24, 2007 physical therapy session at Dynamic, she estimated her current pain level was 2 out of 10.  See Def.'s Trial Ex. F, Dynamic0050.

6

42.   At plaintiff's January 29, 2007 physical therapy session at Dynamic, plaintiff reported that she had gone grocery shopping the previous weekend "and had increased discomfort with prolonged weight bearing."  Def.'s Trial Ex. F., Dynamic 0057.

43.   On February 12, 2007, Dr. Lutz reported that: "She is walking well but she still has some limp.  Overall she is happy with her progress."  Def.'s Trial Ex. D, Lutz0005.

44.   Plaintiff's progress notes indicate that at her February 19, 2007 therapy session at Dynamic, she told her therapist that she was not having knee pain, but that it was "just bothersome."  At trial, plaintiff testified that she does not remember making these comments to the therapist.  Def.'s Trial Ex. F, Dynamic0077; see also Trial Tr. 64.

45.   Plaintiff's progress notes indicate that at her April 2, 2007 therapy session at Dynamic, she reported to her therapist "that overall her knee [was] feeling better" and it was noted that she was "walking with increased cadence."  At trial, plaintiff testified that this was the therapist's opinion about "how [her] knee was doing" and that she "still had a lot of pain."  Def.'s Trial Ex. F, Dynamic0130; see also Trial Tr. 65-66.

46.   Plaintiff broke her left tibia in the 1970s.  See Def.'s Tr. Ex. E, CCMC0018; see also Trial Tr. 59.

47.   When plaintiff visited defendant's expert orthopedic surgeon, Dr. Pashman, she did not report that she had previously broken her left tibia when asked if she had prior injuries.  See Def.'s Trial Ex. C; see also Trial Tr. 66-67.

48.   Plaintiff had "moderately severe osteoarthritis" in her left knee as a result of her prior left tibia break.  Def.'s Trial Ex. B, Riddle0001-0003; see also Trial Tr. 60.

49.  Plaintiff testified that her arthritis was exacerbated by weather changes before the accident in the Post Office.  See Trial Tr. 60.

50.  Plaintiff did not tell defendant's expert Dr. Pashman about her pre-existing osteoarthritis.  See Def.'s Trial. Ex. C.

51.  Plaintiff's testimony pertaining to the severity of her pain and limitations is exaggerated, but is credible to the extent that it shows that she still has some pain and some limitations.  As of her discharge from physical therapy on April 23, 2007 and her trial testimony, plaintiff has experienced some reduced knee flexion and extension and has some residual pain. See Def.'s Trial Ex. F, Dynamic 0142-0146; see also Trial Tr. 54-55.

52.  Plaintiff testified that she had difficulty with housework, cooking, playing golf, power walking, and driving after her knee injury and currently has a limp.  See Trial Tr. 50, 53, 54, 56.

53.  Plaintiff testified that she had a mastectomy in July 2007, after which she was unable to do housework, drive, lift her arm, and play golf.  Id. at 68.

54.  Plaintiff's testimony about her injury's effect on her ability to do housework, cook, drive, walk, play golf and her limp is exaggerated but credible in that she does still experience some limited physical limitations.

55.  Healthcare Recoveries has a subrogation lien with a balance of $12,936.42 on behalf of Independence Blue Cross Family of Companies.  See Pl.'s Trial Ex. 3; see also Trial Tr. 74.

56.  Counsel for both parties stipulated that "[p]laintiff shall not make a claim for future knee replacement as a result of the accident of November 15, 2006."  Trial Tr. 75-76.

8

## B.  CONCLUSIONS OF LAW

1.  This Court has jurisdiction over this action pursuant to the Federal Tort Claims Act,

which states, in pertinent part:

> [T]he district courts . . . shall have exclusive jurisdiction of civil
> actions on claims against the United States, for money damages,
> accruing on and after January 1, 1945, for injury or loss of
> property, or personal injury or death caused by the negligent or
> wrongful act or omission of any employee of the Government
> while acting within the scope of his office or employment, under
> circumstances where the United States, if a private person, would
> be liable to the claimant in accordance with the law of the place
> where the act or omission occurred.

28 U.S.C. § 1346(b)(1); see also Seidman v. U.S., 1996 WL 421905, at *2 (E.D. Pa. July 24,

1996).

2.  Venue in this case is proper pursuant to 28 U.S.C. § 1402(b).  Seidman, 1996 WL

421905 at *2.

3.  "The court must determine whether the circumstances of the accident were such that

the United States, if a private person, would be liable to [plaintiff] under Pennsylvania law."  Id.

(citing 28 U.S.C. § 1346(b); Gales v. U.S., 617 F.Supp. 42 (W.D. Pa. 1985), aff'd without op.,

791 F.2d 917 (3d Cir. 1986)).

4.  Plaintiff was a business invitee of the Brookhaven Post Office.  A business invitee is

"one who is 'invited to enter or remain on land for a purpose directly or indirectly connected with

the business dealings with the possessor of the land.'"  Viccharelli v. Home Depot U.S.A., Inc.,

2007 WL 4276657 (E.D. Pa. December 4, 2007) (quoting Palange v. City of Phila., Law Dep't,

640 A.2d 1305, 1308 (Pa. Super. Ct. 1997)).

9

5.  "The landowner's duty of protection toward business visitors is the highest duty owed to any entrant upon land, and the landowner is under an affirmative duty to protect the business visitor not only against dangers which he knows, but also against those which with reasonable care he might discover. The business visitor enters landowner's premises with implied assurance of preparation and reasonable care for his protection and safety while he is there." Treadway v. Ebert Motor Co., 436 A.2d 994, 999 (Pa. Super. Ct. 1981).

6.  A landowner "is not an insurer of the safety of those on his premises." Moultrey v. Great Atl. & Pac. Tea Co., 422 A.2d 593, 595-96 (Pa. Super. Ct. 1980) (citing Restatement (Second) of Torts § 343 (1965); Martino v. Great Atl. & Pac. Tea Co., 213 A.2d 608, 610 (Pa. 1965); Winkler v. Seven Springs Farm, Inc., 359 A.2d 440, 442 (Pa. Super. Ct. 1976), aff'd without op., 384 A.2d 241 (Pa. 1978)).  "As such, the mere existence of a harmful condition in a public place of business, or the mere happening of an accident due to such a condition is neither, in and of itself, evidence of a breach of the proprietor's duty of care to his invitees, nor raises a presumption of negligence." Moultrey, 422 A.2d at 596 (citing Amon v. Shemaka, 214 A.2d 238, 239 (Pa. 1965); Calhoun v. Jersey Shore Hosp., 378 A.2d 1294, 1296 (Pa. Super. Ct. 1977); Jones v. Sanitary Mkt. Co., 137 A.2d 859, 860-61 (Pa. Super. Ct. 1958)).

Plaintiff must show that the business owner "deviated . . . from his duty of reasonable care under the existing circumstances."   Ryan v. Super Fresh Food Mkts., Inc., 2000 WL 537402, at *1 (E.D. Pa. April 26, 2000).  Plaintiff's "case-in-chief must consist of evidence which tends to prove either that the proprietor knew, or in the exercise of reasonable care ought to have known, of the existence of the harm-causing condition." Ryan, 2000 WL 537402, at *1-2 (citing Moultrey, 422 A.2d at 596).  "Where . . . the dangerous condition is transitory, a

customer ordinarily may satisfy this burden by proving either that defendant created the condition or that the defendant had actual or constructive notice of the condition."  Ryan, 2000 WL 537402, at *2 (citing Gorman v. Simon Brahm's Sons, 148 A. 40, 40-41 (Pa. 1929); Moultrey, 422 A.2d at 598).

      7.  Pennsylvania adopted § 343 of the Restatement (Second) of Torts.  Atkins v. Urban Redevelopment Auth. of Pittsburgh, 414 A.2d 100, 103 (Pa. 1980).

      8.  Restatement (Second) of Torts § 343 provides, in pertinent part:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> © fails to exercise reasonable care to protect them against the danger.

      9.  Pennsylvania's comparative negligence statute states, in pertinent part:

> In all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

42 Pa. C.S.A. § 7102; see also Casselli v. Powlen, 937 A.2d 1137, 1138 n. 1 (Pa. Super. Ct. 2007) ("Pennsylvania's comparative negligence statute, 42 Pa. C.S.A. § 7102, is of the 'not greater than' variety; that is, so long as plaintiff's negligence does not exceed that of all defendants combined, recovery is not barred but is reduced proportionally.").

10.  In the present case, Ms. Cannon, a United States Postal Service employee, mopped the right side of the Brookhaven Post Office floor and placed a caution sign on the right side in front of the entrance.  She then proceeded to mop the left side of the floor while leaving the caution sign on the right side in front of the door customers use for ingress.  By leaving the caution sign in front of the right side of the floor, customers were placed under the impression that the right side of the floor was wet and that they should proceed to the left to avoid the danger of slipping and falling.  This created an unreasonable risk of harm to defendant's business invitees.  When plaintiff entered the Post Office, she was misdirected to walk over the wet floor, which caused her to slip and fall, breaking her left knee.  Defendant should have realized that business invitees would not realize or protect themselves against the danger because in fact they would be directed to walk to the left to avoid the sign.  Defendant failed to exercise reasonable care to protect business invitees from the danger by failing to place the caution sign on the left side of the floor after that side was mopped and became wet and slippery.

11.  Plaintiff was not negligent for wearing either slippers or sandals and she did not fail to protect herself from harm; in fact, plaintiff attempted to protect herself from slipping and falling by walking on the left side of the floor to avoid the area with the caution sign.  Therefore, plaintiff is not barred from recovery under 42 Pa. C.S.A. § 7102.

12.  Plaintiff is entitled to recover compensation for her medical expenses in the amount of $12,936.42, which is the amount of the subrogation lien that Healthcare Recoveries has against her.

13.  Plaintiff is also entitled to recover for pain and suffering.  Plaintiff was hospitalized from November 15, 2006 to November 21, 2006 and suffered a left tibia fracture and left patellar

tendon rupture.  Plaintiff had to undergo surgery on her knee.  After her November 21, 2006

release from the hospital, plaintiff had physical therapy in her home until December 20, 2006.

Plaintiff also completed physical therapy at Dynamic from December 21, 2006 until April 23,

2007.  Therefore, plaintiff endured approximately 21 weeks of physical therapy in total.  Plaintiff

also utilized a knee brace, walker, and cane after her surgery.  Plaintiff may also be experiencing

some residual pain, although it is unclear to what extent this might have been a result of her pre-

existing osteoarthritis condition from a prior knee injury or the exacerbation of such.

14.   Additionally, plaintiff has experienced some limitations in her ability to play golf,

power walk, cook, drive, and do housework, but it is unclear the extent that these limitations

resulted from the present knee injury in light of the fact that she also endured an unrelated

mastectomy.

15.   Nevertheless, plaintiff is entitled to recover damages for pain and suffering, loss of

life's pleasures and other non-economic damages as a result of the Defendant's negligence in the

amount of $80,000.00.

## C.  CONCLUSION

Defendant created an unreasonable risk of harm to Post Office customers when it left a caution sign on the dry portion of the lobby floor and mopped the opposite side of the floor, leaving the wet and slippery side of the lobby without a caution sign.  The caution sign on the right side of the floor misdirected customers to walk over the wet portion of the floor. Defendant should have anticipated that business invitees would fail to realize or protect themselves from the danger because they would be directed to walk to the left to avoid the portion of the floor that had a caution sign.  Defendant failed to protect its business invitees from the harm created by failing to place the caution sign on top of the portion of the floor that was actually wet and slippery.  Plaintiff was one such business invitee and she slipped and fell, causing injury. Plaintiff is entitled to recovery as a result of defendant's negligence.  Plaintiff was not negligent and did not fail to protect herself from harm; therefore, she is not barred from recovery.

An implementing Order follows.

14

15